## Salem

GOODYEAR TIRE & RUBBER COMPANY, et al.

v.

JACKIE PIERCE

No. 0823-88-3

Decided September 19, 1989

. COUNSEL

Martha White Medley (James A. L. Daniel; Meade, Tate & Daniel, P.C., on brief), for appellants.

Stephen G. Bass (Carter, Craig, Bass & Blair, P.C.), for appellee.

OPINION

COLE, J.—Goodyear Tire & Rubber Company ("Goodyear") appeals an Industrial Commission decision awarding compensation to Jackie Pierce. On appeal, Goodyear presents two issues: (1) whether the commission acted arbitrarily in disregarding the deputy commissioner's credibility determination without offering a sound basis or rationale for its different conclusion; and (2) whether Pierce unjustifiably refused medical attention in selecting his chiropractor as treating physician after Goodyear's offer of panel physicians. We affirm.

This case was originally before the commission on Pierce's application filed November 22, 1985, alleging an industrial accident on October 23, 1985. Goodyear and its insurance carrier, Travelers Indemnity Company, defended upon the grounds that no industrial accident occurred and that Pierce sought unauthorized medical treatment. In his opinion dated May 29, 1986, the deputy commissioner found that the issue in the case could be resolved only after making a determination regarding witness credibility and that in view of Pierce's repeated evasive answers, coupled with his demeanor on the stand, his testimony did not carry the credibility necessary to establish that a compensable accident occurred. He determined that Pierce failed to carry his burden of persuasion and thus denied his claim for benefits. On review, the commission reversed the decision of the deputy without hearing additional evidence.

On appeal, a panel of this court held that if the commission does not follow the deputy commissioner's findings when these findings are based on a determination of a key witness's demeanor or appearance in relation to credibility, the commission must offer a rationale for its reversal and demonstrate on the record how the commission found the evidence credible. *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 363 S.E.2d 433 (1987). The panel remanded the case to the full commission to reconsider the case in accord with the views expressed in the opinion. The commission, pursuant to the remand, issued a new opinion dated June 3, 1988.

In its June 3, 1988, opinion, in response to the remand, the commission explained the rationale of their decision. They again reversed the decision of the deputy commissioner and awarded Pierce benefits. This appeal followed.

## THE CREDIBILITY QUESTION

■ In *Williams v. Auto Brokers*, 6 Va. App. 570, 370 S.E.2d 321 (1988), we elaborated upon *Pierce*, holding that Code § 65.1-98 authorizes the commission to reverse a deputy commissioner's factual findings, "including a credibility determination based on behavior, appearance and demeanor, when it articulates a basis for its different conclusion that is supported by credible evidence in the record." *Id.* at 575, 370 S.E.2d at 324. Goodyear asserts that the commission's June 3, 1988, opinion is "crafted in tailor-made fashion, circumvents the directive handed down by this court," and "is still devoid of any rationale which would overcome, in this circumstance, the observations of the hearing officer who specifically noticed Pierce's demeanor."

In his May 29, 1986, opinion, the deputy commissioner commented upon Pierce's testimony. He opined that the issue was the presence or absence of an accident meeting the mandate of Code § 65.1-7 and stated that its resolution "revolves on the basis of witness credibility." He specifically referred to a statement signed by Pierce on a hospital pass on the date of the occurrence where he did not report any internal back problem but said he "reached down to get another and felt a pain." The deputy commissioner further stated that there was no indication on the hospital pass that the claimant "had even touched another drum or another part of the equipment or was in the act of lifting anything at the time of this event."

In addition, the deputy commissioner's opinion, without referring to any specific portions of the record or testimony of Pierce, contains this statement which has been the focal point of much of the controversy in this case:

In the case at bar this plaintiff was, during the course of his cross-examination, repeatedly evasive in his answers to the extent that he gave the clear appearance of intentionally trying to avoid giving a direct response to an uncomplicated question. The plaintiff accomplished this by his argumentative answers to such questions by defense counsel. This evasiveness which was clearly apparent to this Hearing Commissioner, coupled with the inconsistent testimony of the plaintiff as contrasted to his signed statement on the hospital

pass . . . raises a substantial question as to the credibility of this plaintiff.

On direct examination, Pierce testified that he sustained the injury on October 23, 1985, in the following manner:

I had completed the tire, broke the drum down and took the — removed the tire off the drum, and I was putting the drum back together, the outside section, you have a outside section too, they're light. O.K., I put them on, I bent down, reached and got the middle section, that's the heaviest part of the drum cause weights is in it. You have to have that to balance the drum when it's spinning on air. So, when I came up with the drum, a sharp pain hit me in the lower part of my back and I dropped the section. Well, I didn't have no choice but to drop it, because I mean I was hurting, and I called the supervisor.

According to the testimony of Pierce, his supervisor came to his machine, ascertained what happened, and filled out a medical department hospital pass to permit him to see the plant nurse. The plant hospital pass contains the following description of the injury alleged to have occurred at the time: "Lower central back hurt — picked up section and applied to drum. Reached down to get another and felt a pain." Pierce signed the pass in a blank space under a heading of date/time of examination. He claims that the description of the injury was not written on the pass when he signed it. The deputy commissioner concluded that the discrepancy in Pierce's versions of the accident reflected adversely on his credibility.

The commission looked at this evidence in a different light. In its June 3, 1988, decision, the commission explained its rationale. It found that the deputy commissioner placed inappropriate emphasis upon the second portion of the statement contained in the hospital pass without considering the entire statement and Pierce's testimony. It pointed out that the first part of the hospital pass statement made it clear that Pierce had lifted a section of a tire mold weighing some fifty-five to sixty pounds. Commissioner O'Neill, in a concurring opinion, expressed the view that the hospital pass was not a medical report but an authorization that

would permit Pierce to leave his work site and get to the dispensary. Further, the plain language of the pass shows that the information sought in the blank space was a description of the injury or illness, not a description of how the accident or illness occurred. The short note written by the supervisor more than filled up the small space allotted for that purpose.

The commission also disagreed with the finding of the deputy commissioner that during cross-examination Pierce was evasive and gave the clear appearance of intentionally trying to avoid giving a direct answer to uncomplicated questions. The commission concluded that, while Pierce may have been confused from time to time in his answers to questions, his testimony was corroborated by the medical reports. It further opined that, although they could not determine from the record Pierce's demeanor on the stand, the answers themselves did not support the deputy commissioner's finding that Pierce was evasive and argumentative. Commissioner O'Neill, in his concurring opinion, stated:

Only in the vigorous cross-examination by employer's counsel do we see that the claimant's testimony might give rise to the interpretation by the deputy commissioner that the claimant's answers are evasive. I do not consider them to be evasive. The claimant was specific and informative in direct examination. Upon cross-examination the method of the examiner involved not only questions but also numerous direct statements which were offered as facts to be accepted or denied by the claimant. The nature of those direct statements, which the claimant clearly attempted to deny, brought forth efforts by the claimant to make statements of his own and to give what he characterized as truthful answers. His efforts were pronounced and they met with obvious frustration upon interruption by the cross-examiner. This transcript exhibits a closely-examined, frustrated witness with limited language skills confronted by an experienced and skilled attorney. I view the result not as conduct suggesting a failure of the claimant's credibility, but rather, as an example of the adversary system in operation.

Therefore, when the Deputy Commissioner described the claimant's appearance as "intentionally trying to avoid giving a direct response to an uncomplicated question," I find that

the claimant clearly disagreed with many statements as posed by the cross-examiner and that he attempted to give what he considered to be truthful answers rather than relying upon words supplied by the cross-examiner. I believe the witness's credibility to have been strengthened and enhanced by his repeated statements indicating he desired to have truthful evidence in the record rather than assents or dissents to statements with which he did not agree.

In support of its position, Goodyear contends that at the hearing, Pierce unequivocally denied prior back trouble, saying he had "never had no back strain" and had "never hurt his back before." However, Goodyear's hospital records, according to the testimony of nurse Abbott, indicate that Pierce came to the plant hospital on May 30, 1984, to file a report of injury for back strain which occurred on April 30, 1984. Goodyear asserts that this conflict in the evidence also affects Pierce's credibility. However, Pierce did not seek treatment on this occasion, but only desired to report the incident. Pierce explained the apparent inconsistency, stating that his problem in April, 1984 resulted from his kidneys. The commission found from these facts that Pierce was in a better position to know the cause of his complaints in April, 1984, than the nurse, who did not examine him. Therefore, the commission concluded that Pierce's testimony was entitled to greater weight.

Goodyear asserts that the demeanor of a witness encompasses facial expressions, diverting the eyes, shifting in the witness chair, furtive glances to counsel or others, uneasiness of posture or manner, and twitches or ticks of the witness, all of which may speak the truth more loudly than the transcript of testimony, and that the commission failed to address the deputy commissioner's finding concerning demeanor. However, the record does not reflect any such conduct on Pierce's part and for us to assume that such was present would amount to surmise and speculation. Furthermore, a deputy commissioner cannot render his findings of fact unreviewable by asserting that his conclusion as to a witness's credibility was based on appearance and demeanor. *Williams*, 6 Va. App. at 574, 370 S.E.2d at 323. Most of the factors affecting credibility appear in the record. The commission can evaluate the testimony of witnesses in the light of human experience, ascertain which testimony is more worthy of belief, and grant to it its ap-

propriate weight.

We find that the commission has articulated a basis for its conclusion and that it is supported by credible evidence in the record. Accordingly, Code § 65.1-98 authorizes the commission to reverse the factual findings of the deputy commissioner, including a credibility determination based on behavior, appearance and demeanor.

## UNJUSTIFIABLE REFUSAL OF MEDICAL ATTENTION

Goodyear contends that Pierce unjustifiably refused medical attention in selecting a chiropractor as his treating physician after its offer of a panel of physicians. It asserts that Pierce was offered a choice of physicians and its panel was communicated to Pierce personally as early as October 31, 1985, and at the latest by November 8, 1985. Pierce claims that a panel of physicians must be provided by the employer at the time of the injury and, if not done, the employee is free to select the initial treating physician. He contends that no panel was offered to him and he, therefore, was free to select a chiropractor as his treating physician.

The commission, in its June 3, 1988, decision, was divided on the issue whether Pierce refused medical attention offered by Goodyear. Commissioner Joyner in the majority opinion held that once the compensability of the claim was denied, the issue was moot and he ordered the employer to pay all related medical care caused by the accident of October 23, 1985, including the medical treatment rendered by Dr. Stephen D. Saunders, D.C. Commissioner O'Neill, in a concurring opinion, found that there was no offer of a panel of physicians to Pierce in accord with Code § 65.1-88. He found no evidence that Pierce adopted Dr. Pritchett as his treating physician since he saw him only on one visit. He opined that Goodyear could have fulfilled its statutory right to insure nonchiropratic medical care for Pierce by offering him a panel on several occasions, but did not do so. Therefore, he concluded that Pierce was entitled to reimbursement by Goodyear for the chiropractic treatment. Chairman James, concurring and dissenting, concluded that Pierce accepted the arrangement of Goodyear for him to see Dr. Pritchett the next day; thus, he concluded that Pierce was not entitled to compensation for disability because of his refusal to accept the medical treatment offered by Goodyear.

In the event of a compensable work related injury, Code § 65.1-88 provides that the employer shall furnish free of charge to the employee a physician of his choice from a panel of at least three physicians and the attendant medical costs. If no panel of physicians is offered to the employee, he or she is free to select his own physician. Once the selection is made, "the employee is not at liberty to change therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or [the] Commission." *Davis v. Brown & Williamson Tobacco Co.*, 3 Va. App. 123, 126, 348 S.E.2d 420, 421 (1986)(quoting *Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 194, 319 S.E.2d 769, 770-71 (1984)). "If the employee refuses such medical services, and the refusal is without just cause, Code § 65.1-88 bars the employee from receiving compensation or medical benefits until the refusal is cured." *Id.* at 127, 348 S.E.2d at 422. Under our statute, the employer has the obligation and responsibility to supply medical treatment that is prompt, in compliance with the statutory requirements on choice of physicians, and adequate. If the employer fails to do so, the claimant may make suitable arrangements to acquire such treatment at the employer's expense. 2 A. Larson, *The Law of Workmen's Compensation* § 61.12(d) (1987).

Goodyear was not required to furnish Pierce medical services at its own expense unless he had received an injury by accident arising out of and in the course of the employment. By letter dated November 13, 1985, Goodyear's insurance carrier, Travelers Insurance Company, informed Pierce that their investigation disclosed that he was not entitled to benefits and that no voluntary payments would be made. The effect of this letter was to inform Pierce that his medical services would be at his own expense and that he would not receive such services at the expense of the employer. We have held that the employer's denial of liability under the Act is equivalent to a refusal to provide the employee with medical services. *Bradley v. Southland Corp.*, 3 Va. App. 627, 629, 352 S.E.2d 718, 719 (1987). The employer cannot refuse to provide the employee with full medical service and also insist that he seek medical care only from physicians it selects. Such a policy would require an employee to seek treatment from a physician chosen by the employer but would not require the employer to pay the physician's charges. *Id.* When Travelers denied liability on November 13, 1985, and refused to provide Pierce

with medical services, Pierce was entitled to choose his own physician. Therefore, we find that there is credible evidence in the record to support the position of the majority opinion that whether a panel had been offered by the employer was a moot question under the circumstances.

Additionally, we find that a panel of at least three physicians was not properly offered to Pierce. On November 8, 1985, Pierce had a conversation with nurse Marion Abbott about the panel. Pierce told Abbott that he wanted to chose Dr. Saunders as his physician. Abbott explained that Saunders was a chiropractor and that "he should see either an orthopod or a neurologist or a neurosurgeon." At the hearing, Abbott gave the following testimony:

Q. Did you also explain to him about the panel of physicians selected by Goodyear for Work Comp [sic] matters?

A. Yes, I did.

Q. And did you offer to make him an appointment with any doctors listed on that panel of physicians?

A. Yes, I did.

Q. What doctors were those?

A. I suggested the Orthopedic Clinic which I thought was more specialized.

Q. The Danville Orthopedic Clinic?

A. Yes.

Q. And did he permit you to make such an appointment?

A. No.

We hold that this exchange does not satisfy the requirements of Code § 65.1-88. It is insufficient for the employer to state that the names of the physicians are posted at various locations in the plant. An employer under the scheme of the statute is required to offer the medical services of at least three physicians and to advise the employee of the identity of the panel physicians from which he can make his choice of treating physician. There is no direct evidence in the record that this was done. Nurse Abbott encouraged Pierce to choose the Danville Orthopedic Clinic. The clinic, how-

ever, is not a physician as envisioned by the statute. Had Pierce permitted Abbott to make an appointment with the clinic, he would have had no assurance who his physician would have been when he arrived there. We find that this procedure does not comply with the provisions of Code § 65.1-88. Although Pierce was sent in a taxi cab on October 28, 1985, to see Dr. Pritchett, there is no evidence that Dr. Pritchett became his treating physician, or that he saw him again after that one visit. Goodyear did not consider Dr. Pritchett as the treating physician because they were discussing the choice of the panel physicians thereafter on November 8, 1985.

■ An attending physician selected by an employee becomes the treating physician if the employer fails or refuses to provide a panel of physicians. *Davis*, 3 Va. App. at 126, 348 S.E.2d at 421. In *Breckenridge v. Marvel Poultry Co.*, 228 Va. 191, 319 S.E.2d 769, the Supreme Court endorsed the commission rule:

> [I]f the employer fails to offer the injured employee a panel of physicians, the employee is at liberty to select a physician of his own, however, once said selection is made the employee is not at liberty to change therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or [the] Commission.

*Id.* at 194, 319 S.E.2d at 770-71. We find sufficient credible evidence in the record to support the award to Pierce of all related medical care caused by the accident of October 23, 1985, including the medical treatment rendered by Dr. Stephen D. Saunders.

For the reasons stated herein, the decision of the Industrial Commission is affirmed.

*Affirmed.*

Koontz, C.J., and Keenan, J., concurred.