OGDEN ALLIED AVIATION SERVICES AND

NATIONAL UNION FIRE INSURANCE CO. OF

PITTSBURGH

V.

DAVID WAYNE SHUCK

No. 1641-92-4

Decided September 14, 1993

COUNSEL

Susan A. Evans (Siciliano, Ellis, Dyer & Boccarosse, on brief), for appellants.

No brief filed on behalf of appellee.

OPINION

**COLEMAN, J.**—Ogden Allied Aviation Services, employer, seeks reversal of the commission's findings that David Wayne Shuck, claimant, sustained an injury that arose out of his course of employment. We affirm the commission's decision.

On March 21, 1990, claimant was employed with employer as an aircraft refueler. Claimant's job was to connect the fuel hose and then look at the fuel gauges directly overhead to determine when the aircraft was completely fueled. On this date, claimant was looking up at the gauge, heard a pop in his neck and sustained an injury.

Relying on *County of Chesterfield v. Johnson,* 237 Va. 180, 376 S.E.2d 73 (1989), and *Plumb Rite Plumbing Service v. Barbour,* 8 Va. App. 482, 382 S.E.2d 305 (1989), the deputy commissioner dismissed the case, holding that the claimant did not prove an accident arising out of his employment. The deputy commissioner held that looking upward is an activity that is "too common to the public at large to be considered a peculiar risk of his employment."

The commission reversed the deputy commissioner. It found that "claimant's work requires that he tilt his head back to an angle that allows him to look directly overhead at the . . . fuel gauges . . . and to do so on a regular basis." The commission found that because this task placed the claimant in "an unusual or awkward position in which to work," the injury that the claimant received as a consequence of this activity arose out of his employment. We affirm the commission's decision.

█ A claimant must "show that the conditions of the workplace or that some significant *work related exertion* caused the injury. The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." *Barbour,* 8 Va. App. at 484, 382 S.E.2d at 306 (emphasis added).

Claimant testified that "the prolonged looking up at the fuel gauges is what caused it" and that he had to look up "generally fifteen to twenty minutes." Claimant further testified that while he was looking up at the fuel gauges on the airplane, he would fill out paperwork and that "[i]t's a constant up and down process doing paperwork and watching the fuel gauges."

In addition to describing the length of time he spent looking up and down, the claimant testified as to the specific physical act of looking up that is required to view the fuel gauges. "It's almost straight up and down when you have to look at the gauges`. . . [t]hey're immediately over your head."

We hold that the repeated act of looking straight up to view the fuel gauges, as the claimant testified, supported the commission's finding that the claimant performed this task in "an unusual or awkward position," and, as a consequence, the injury to his neck was related to exertion peculiar to his employment. Accordingly, we affirm the commission's decision.

*Affirmed.*

Willis, J., concurred.

Moon, C.J.,* dissenting.

I disagree with the majority that credible evidence supports the award of the commission. At the deputy commissioner's hearing, claimant's testimony was ambiguous as to the cause of his injury. At one point, he said, "I think that prolonged looking up at the fuel gauges is what caused it. I felt it like a pop in my neck, and . . . I knew right then that something was wrong. And after about an hour it was pretty tight, I couldn't hardly move it." He also stated that, "to watch the gauges with the door panel open, you can't look at a small angle. Its almost straight up and down when you have to look at the gauges. They are immediately over your head . . . approximately eight feet . . . I'm six foot, I'm only looking two feet."

After that testimony, William Roberson, a witness for the employer, testified that "the average fueler fuels six to eight airplanes." He further testified as follows:

Q. Can you . . . you've heard the testimony where [claimant] said that he looked up or to the right. The action of looking up to look at fuel gauges, is that an unusual action or would that be the same as you'd look up at the light or look up at something on the ceiling?
A. It would be exactly the same as just looking up.

*On May 1, 1993, Judge Moon succeeded Judge Koontz as Chief Judge.

Q. You have just shown us that you tilted your head back so that your eyes would . . . a gaze would go higher up in the air, is that correct?

A. Yes.

The deputy commissioner then recalled the claimant and the following exchange occurred:

Q. Sir, you've heard the testimony of Mr. Roberson as to approximately how many times per day that you'd be lifting—reviewing the gauges. Is that accurate to the best of your knowledge?
A. I would say so. That's pretty close.
Q. And you heard him describe the motion of looking up, and is that essentially—Would you agree that that's the motion that you engage in to look at these gauges and were on March 21, 1990?
A. Yes, ma'am.
Q. Is there anything different about the motion than what's already been described up to this point?
A. The motion of looking at the gauges was correct. It's sometimes a little bit different when you're hooking up to a plane.
Q. Was the motion that Mr. Roberson just did to look up, which we all saw, is—can you remember whether that's the motion you were involved in at the time that your neck popped?
A. It was—It was watching the gauges at the time.
Q. Is that looking straight up?
A. Yes, ma'am.

The deputy commissioner saw this action and made certain findings of fact in her opinion. After observing the activity, she stated: "[H]ere the claimant merely looked upward to review the gauge, an activity that is too common to the public at large to be considered a peculiar risk of his employment."

Not only did the deputy commissioner have the benefit of seeing and hearing witnesses, but she was able to see the demonstration of the witness Roberson which was observed by the claimant and agreed to by the claimant as the action he was making at the time his neck popped. We have held that observations at a hearing made by the deputy may not be arbitrarily disregarded. *Pierce v. Goodyear Tire & Rubber Co.,* 9 Va. App. 120, 384 S.E.2d 333 (1987). Not only may an individual's neck flex but an individual's eyes are capable of looking

both up and down. One can see even directly overhead without having to flex or tilt the neck in some extraordinary manner by merely focusing his or her eyes upwards.

The full commission found that "[t]he claimant's work required that he tilt his head back at an angle that allows him to look directly overhead at the hose connection and fuel gauges which apparently are in the aircraft wing, and do so on a regular basis. While this, in itself, is not strenuous, we find upon review that it is an unusual or awkward position in which to work. He described an audible `pop' in his neck followed immediately by tightness which became progressively worse."

I do not believe these findings are supported by credible evidence. I do not believe the commission, without arbitrarily disregarding the observations of the deputy, could find this to have been an injury by accident.

Because, in her finding of fact, the deputy commissioner described the type of movement made by the claimant as "claimant merely looked upward to view the gauge, an activity that is too common to the public at large to be considered a peculiar risk of the employment," I would hold on this record that claimant did not prove that the activity causing his accident was not one "too common to the public at large to be considered a peculiar risk of his employment." *County of Chesterfield v. Johnson,* 237 Va. 180, 376 S.E.2d 73 (1989).