COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Hodges
Argued at Chesapeake, Virginia


DUMP FURNITURE STORE/HAYNES
 FURNITURE CO. INC. AND ROYAL AND
 SUNALLIANCE INSURANCE COMPANY
                                        MEMORANDUM OPINION* BY
v.    Record No. 3400-01-1               JUDGE LARRY G. ELDER
                                           OCTOBER 1, 2002
RITA L. HOLLOWAY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              William C. Walker (Amanda R. Castel; Taylor &
              Walker, P.C., on brief), for appellants.

              Robert E. Walsh (Rutter, Walsh, Mills &
              Rutter, L.L.P., on brief), for appellee.


     The Dump Furniture Store/Haynes Furniture Co. Inc. and

Royal and Sunalliance Insurance Company (employer) appeal from a

decision of the Workers' Compensation Commission (the

commission) awarding disability benefits to Rita L. Holloway

(claimant).  On appeal, employer contends the commission

erroneously determined who claimant's treating physician was and

erroneously relied on the opinions of unauthorized physicians to

support an award of temporary total disability benefits.  We

hold credible evidence supports the commission's decision, and

we affirm the award.

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal of a decision of the commission, we construe the evidence in the light most favorable to the party prevailing below, and we must uphold the commission's findings of fact if the record contains credible evidence to support them. See, e.g., Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993).

## I.

### CHOICE OF TREATING PHYSICIANS

Code § 65.2-603(A)(1) provides that for "[a]s long as necessary after a [compensable industrial] accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen from a panel of at least three physicians selected by the employer and such other necessary medical attention."

> [I]f the employer fails to offer the injured employee a panel of physicians, the employee is at liberty to select a physician of his own[;] however, once said selection is made the employee is not at liberty to change therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or [the] [c]ommission.

Breckenridge v. Marvel Poultry Co., 228 Va. 191, 194, 319 S.E.2d 769, 770-71 (1984).

Here, uncontradicted evidence establishes that employer never provided claimant with a panel from which to choose a treating physician. Instead, employer named a particular medical facility, Riverside Mercury West, as the only facility

- 2 -

from which claimant could obtain treatment at employer's expense. As we held in Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 130, 384 S.E.2d 333, 339 (1989) (decided under predecessor statute Code § 65.1-88), "this procedure does not comply with the provisions of Code § [65.2-603]."

Further, credible evidence supports the commission's finding that Dr. O.T. Adcock, the physician at Riverside Mercury West who treated claimant, did not become her treating physician. Although "[a]n attending physician selected by an employee becomes the treating physician if the employer fails or refuses to provide a panel of physicians," Pierce, 9 Va. App. at 130, 384 S.E.2d at 339, credible evidence supports the finding that claimant did not choose Dr. Adcock. Rather, claimant testified that she went to Riverside Mercury West, where she saw Dr. Adcock, because employer told her this was the only facility at which she was authorized to obtain treatment at employer's expense. Further, as the commission noted, claimant saw Dr. Adcock only two or three times during a one-week period and did not establish a course of treatment with him. Thus, claimant selected a treating physician, within the meaning of Code § 65.2-603, when she chose to see Dr. Thomas Stiles, an orthopedic physician.

Because credible evidence supports the commission's determination that Dr. Stiles rather than Dr. Adcock was claimant's treating physician, we need not address employer's

contention that claimant failed to establish justification for a change in treating physicians.

## II.

### CAUSATION AND EXTENT OF DISABILITY

"Causation is an essential element which must be proven by a claimant in order to receive an award for an injury by accident." AMP, Inc. v. Ruebush, 10 Va. App. 270, 274, 391 S.E.2d 879, 881 (1990). The commission's determination regarding causation is a finding of fact. Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993). "'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing.' The testimony of a claimant may also be considered in determining causation, especially where the medical testimony is inconclusive." Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (quoting Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991)).

A claimant alleging disability as a result of an injury by accident also bears the burden of proving both the disability and the periods of that disability. Marshall Erdman & Assocs., Inc. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149 (1997). Like a finding of causation, the commission's determinations regarding the nature and duration of a claimant's disability also are findings of fact. Thus, unless we can say as a matter of law that claimant's evidence failed to sustain her burden of

- 4 -

proving causation or the duration of her disability, the commission's findings are binding and conclusive upon us.  <u>Tomko v. Michael's Plastering Co.</u>, 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

Here, credible evidence supported the commission's finding that claimant was totally disabled from March 29 through September 6, 2000, and again from November 28, 2000, and continuing and that claimant's compensable industrial injury of February 18, 2000, was the cause of this ongoing total disability.

Immediately after a set of bed rails fell on claimant on February 18, 2000, she began to experience pain in her head, jaw including her right temporomandibular joint (TMJ), right shoulder, right arm and the right side of her neck, and she had difficulty opening her mouth.  When she saw Dr. Adcock on February 21, 2000, she complained of ongoing headache as well as pain and stiffness on the entire right side of her body.  On February 27, 2000, she reported that her headache and muscle stiffness continued, that she had pain in her right jaw and cheek, and that her pain was "just getting worse and worse."

When claimant saw Dr. Stiles on March 29, 2000, her symptoms continued, and an MRI revealed bulging discs at C5-6 and C6-7 and mild spinal cord compression.  By letter of July 21, 2000, Dr. Stiles opined that claimant had been totally disabled from work due to pain and spasm from March 29, 2000,

the date on which he first saw her, through June 8, 2000, the date he last examined her prior to writing the letter. He noted claimant's ongoing severe neck pain and numbness of the arm, face, head and upper extremity. He diagnosed claimant as having bulging discs as C5-6 and C6-7 and upper extremity weakness, and he opined that these conditions were due to her industrial accident. Dr. Stiles subsequently opined that claimant was disabled continuously from March 29, 2000, through early 2001.

On referral from Dr. Stiles, Dr. J. Abbott Byrd, III, also treated claimant during this period of time. When Dr. Byrd first saw claimant on May 17, 2000, he diagnosed her as having a facial contusion, cervical strain with radiculopathy, and a possible TMJ problem. Although Dr. Byrd did not specifically link claimant's problems to her employment, he agreed with Dr. Stiles that claimant was totally disabled at that time. Dr. Byrd saw claimant on at least three additional occasions through September 6, 2000. Although Dr. Byrd said he had nothing further to offer claimant in regard to her spine condition, he refilled her prescriptions and told her she could return to see him as necessary. He subsequently opined that claimant was totally disabled as of September 6, 2000, the date he last saw her, "because of her continued symptoms."

Dr. Mrazik, an oral surgeon who saw claimant on July 21 and August 4, 2000, ordered an MRI of her TMJ and diagnosed "[m]yalgia associated with the muscles of mastication."

- 6 -

Dr. Mrazik gave no opinion regarding whether claimant was disabled during this period of time, but he noted his treatment of claimant was due to her "[w]ork related injury."

Claimant returned to Dr. Stiles on November 28, 2000. He opined at that time that claimant continued to suffer severe neck and arm problems and a "causalgic-type symptomatology" because of her industrial injury, and claimant remained under Dr. Stiles' care for those conditions. Dr. Stiles referred claimant to a neurologist who noted that claimant had signs of denervation in the deltoid muscle which suggested C5-6 radiculopathy.

In early 2001, Dr. Stiles issued a disability slip excusing claimant from work from March 29, 2000, through January 10, 2001, and he referred claimant back to Dr. Byrd "regarding surgery." On January 31, 2001, Dr. Byrd, who treated claimant for the cervical spine problem Dr. Stiles linked to claimant's industrial injury, opined that claimant remained unable to work. Finally, claimant testified that she was scheduled to undergo disc surgery on her neck on March 23, 2001, and she denied suffering any other injuries to her head, neck or shoulder since her compensable injury of February 18, 2000.

This evidence, found credible by the commission, established that claimant's February 18, 2000 accident caused her severe, ongoing neck, arm and jaw problems and a related "causalgic-type symptomatology . . . with sympathetic

involvement." The evidence also established that these ailments rendered her totally disabled from March 29 through September 6, 2000, and again from November 28, 2000, and continuing.

For these reasons, we affirm the commission's award of medical and disability benefits.

<u>Affirmed.</u>