COURT OF APPEALS OF VIRGINIA


Present: Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


TURNER GILBANE JV AND
 ZURICH AMERICAN INSURANCE COMPANY

                                                              OPINION BY
v.        Record No. 0392-11-4                    JUDGE SAM W. COLEMAN III
                                                              NOVEMBER 22, 2011
JOSE GUZMAN


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Joseph F. Giordano (Kathryn Lea Harman; Semmes, Bowen &
              Semmes, P.C., on briefs), for appellants.

              Andrew S. Kasmer for appellee.


        Turner Gilbane JV and its insurer, Zurich American Insurance Company (collectively

"employer"), appeal a decision of the Virginia Workers' Compensation Commission

("commission") awarding Jose Guzman ("claimant") temporary total disability benefits and

medical benefits. On appeal, employer argues the evidence did not support the commission's

findings. In addition, employer argues the commission erred in: (1) finding claimant was

offered a defective panel of physicians and did not establish a course of treatment; (2) finding

Dr. Michael Davis was not claimant's treating physician; (3) giving insufficient weight to the

opinion of Dr. Davis; (4) finding Quality Chiropractic and Dr. Vandana Sharma were claimant's

treating physicians; and (5) holding claimant was entitled to temporary total disability benefits

from September 8, 2009 through March 4, 2010, inclusive. For the following reasons, we affirm

the decision of the commission.

<u>Background</u>

On appeal from a decision of the commission, we review the evidence in the light most favorable to claimant, the party prevailing below. <u>Lynchburg Foundry Co. v. Goad</u>, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993).

Claimant worked as a laborer for employer, and his job required him to move heavy items. On September 8, 2009, claimant was washing trucks and washing the floor when a truck struck him from behind, causing him to fall to the floor. Claimant was unconscious for a period of time, and he traveled by ambulance to the hospital where he reported having head, neck, and back pain. Employer knew of the accident on the date it occurred.

On September 10, 2009, claimant sought treatment from the chiropractors at Quality Chiropractic, whose name claimant obtained from an internet search. Claimant reported having head, neck, and back pain to the chiropractor. Dr. Daniel J. Shaver, one of the chiropractors who treated claimant, recommended that he see a neurologist and that he refrain from work until September 14, 2009. In addition, the September 10, 2009 chiropractor's report states: "To date [claimant's] employer had not given him any instructions to seek medical care anywhere therefore the patient came to my office." Claimant continued a course of treatment with the chiropractors. After a series of visits, the chiropractors advised claimant not to return to work through at least September 29, 2009.

On September 29, 2009, claimant saw a neurologist, Dr. Sharma, as recommended by his chiropractor. Dr. Sharma assessed claimant with post-concussion syndrome, including headaches and dizziness. Dr. Sharma also diagnosed claimant with post-traumatic cervical and lumbar sacral strain syndrome. He recommended medications for headaches and physical therapy for the management of cervical and lumbar sacral strain.

By letter dated September 21, 2009, employer provided claimant with a panel of physicians that consisted of Dr. Davis of Virginia Medical Acute Care ("VMAC"), Concentra Medical Center, Saratoga Medical Clinic, and the names of three orthopedic surgeons from The Manus Center. On September 30, 2009, claimant saw Dr. Davis. An Attending Physician's report from VMAC, dated September 30, 2009 and signed by Dr. Davis, states: "F/U neuro as he has not returned to work," presumably directing claimant to "follow up with a neurologist." Dr. Davis's report further stated that claimant had reached maximum medical improvement.

Claimant testified at the hearing that after seeing Dr. Davis, he understood he was supposed to "visit a neurologist" and "get treatment with the chiropractor." Claimant stated that he was not told to return to VMAC and he continued to see the neurologist, Dr. Sharma, and the chiropractors at Quality Chiropractic. He stated he received work status reports from those doctors, which his brother provided to employer. The record contains work status reports from the chiropractor's practice, which were addressed to Watson Morgan, claimant's supervisor.

The record also contains reports documenting claimant's continuing physical problems with post-concussion syndrome and cervical and lumbar injuries, but noting his conditions improved over the next several months. However, the reports state that claimant was unfit to return to work until March 4, 2010, the date Dr. Sharma released him to light-duty work.

On May 6, 2010, Dr. John Cochran, a neurologist, examined claimant and reviewed claimant's medical records at employer's request. Dr. Cochran opined that claimant had soft tissue injury that explained his interscapular pain. Dr. Cochran detected no signs that claimant was malingering or magnifying his symptoms, and he opined that claimant was able to return to light-duty work with no heavy lifting.

Claimant requested awards of medical benefits and temporary total disability compensation from September 8, 2009 through March 4, 2010, alleging head, neck, back, and

left shoulder injuries as a result of the accident. Employer defended on the grounds that claimant did not suffer a head injury and his treatment with the neurologist, Dr. Sharma, was unauthorized.

The commission found that, although employer timely provided claimant with a panel of physicians, the panel was defective because it contained only two physicians instead of three as required by Code § 65.2-603. The commission also held claimant did not establish a course of treatment with Dr. Davis. Thus, Dr. Davis was not claimant's authorized treating physician. Therefore, claimant was free to choose his treating physician and course of medical treatment. The commission found Dr. Sharma and the chiropractors at Quality Chiropractic were claimant's authorized treating physicians and their opinions were entitled to great weight. The commission found the evidence proved claimant was unable to work through March 4, 2010, and it awarded him temporary total disability benefits from September 9, 2009 through March 4, 2010, inclusive. It also awarded medical benefits for as long as necessary for claimant's neck, back, left shoulder, and head injuries that were caused by his accident.

Employer appeals the commission's decision to this Court.

## Analysis

"Factual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." Georgia Pac. Corp. v. Dancy, 17 Va. App. 128, 135, 435 S.E.2d 898, 902 (1993). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Code § 65.2-603(A)(1) provides: "As long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen

by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention."

The panel provided by employer was defective. The panel included the name of one physician and the names of a medical center, a medical clinic, and three orthopedic surgeons from the same practice, The Manus Center. The Manus Center treats hand and upper extremity injuries. Claimant suffered injuries to his head, neck, and back, and he did not report hand or upper extremity injuries. Moreover, "[a] clinic . . . is not a physician as envisioned by the statute." Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 129-30, 384 S.E.2d 333, 339 (1989) (decided under predecessor statute Code § 65.1-88). Additionally, employer's panel did not contain a neurologist and the commission noted that the claimant suffered a head injury resulting in a concussion during the incident--a finding not appealed by employer. Accordingly, the evidence supports the commission's finding that the panel was defective.

"Code § 65.2-603 allows an employee to select from a panel of physicians offered by the employer, or in the absence of a forthcoming offer, to select a physician of the employee's choice." Biafore v. Kitchin Equip. Co., 18 Va. App. 474, 478, 445 S.E.2d 496, 498 (1994). "[T]he employer has the obligation and responsibility to supply medical treatment that is prompt, in compliance with the statutory requirements on choice of physicians, and adequate. If the employer fails to do so, the claimant may make suitable arrangements to acquire such treatment at the employer's expense." Goodyear, 9 Va. App. at 128, 384 S.E.2d at 338. Here, although employer offered claimant a panel of physicians, the panel was defective. Therefore, claimant had the right to select the physician of his own choosing. Claimant began a course of treatment with Quality Chiropractors, who referred him to Dr. Sharma. Although claimant saw Dr. Davis for one appointment during which Dr. Davis apparently examined claimant, the record does not

show claimant was treated by Dr. Davis.[1]  Thus, Dr. Davis was not claimant's authorized treating physician.[2]  Furthermore, claimant testified that Dr. Davis recommended he continue treatments with a chiropractor and a neurologist, which is the course of action claimant took. Indeed, the September 30, 2009 Attending Physician's Report, signed by Dr. Davis, states "F/U neuro as he has not returned to work."

Because Dr. Sharma and the chiropractors at Quality Chiropractic were claimant's treating physicians, the commission was entitled to give their opinions great weight.  See United Airlines, Inc. v. Sabol, 47 Va. App. 495, 501-02, 624 S.E.2d 692, 695 (2006).  In the opinion of these physicians, claimant made progress over the course of the treatments, but he was unable to return to work until March 4, 2010, and then only for light-duty work.[3]  The commission accepted the opinion of the treating physicians.  "If there is evidence or reasonable inference that can be drawn from the evidence to support the [c]ommission's findings, they will not be disturbed by this Court on appeal . . . ."  Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983).  We do not retry the facts or review the weight of the evidence.  See id.  We hold that credible evidence supports the commission's findings and its decision to award medical benefits and temporary total disability benefits to claimant.

---

[1] We note that the Attending Physician's Report, signed by Dr. Davis, contains, for the most part, indecipherable handwriting in the "Diagnosis" and "Nature of Treatment" portions of the form.  Neither party called Dr. Davis to testify at the hearing before the deputy commissioner, and the record contains no other documentation from Dr. Davis.  Therefore, on this record, other than the testimony of claimant, we are unable to determine in large part what occurred during claimant's one visit to Dr. Davis.

[2] Because Dr. Davis was not claimant's authorized treating physician, we need not address employer's arguments that claimant waived any objection to the panel by commencing treatment with Dr. Davis and that claimant unilaterally sought treatment from unauthorized physicians after establishing a course of treatment with Dr. Davis.

[3] We note that Dr. Cochran, who examined claimant at employer's request, also opined in May 2010 that claimant was capable of returning to light-duty work with no heavy lifting.

Employer asks that we overrule Goodyear, which held that providing the name of a clinic for a panel of physicians does not satisfy the statutory requirement to provide the name of a physician. See Goodyear, 9 Va. App. at 129-30, 384 S.E.2d at 339. Employer argues that most modern medical practices consist of clinics and groups of physicians and that to allow the employer to designate medical groups or clinics serves the best interest of injured employees. We necessarily reject counsel's invitation that this panel overrule Goodyear. Under the interpanel accord doctrine, the "decision of one panel 'becomes a predicate for application of the doctrine of *stare decisis'* and cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003); see Commonwealth v. Burns, 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990).

Furthermore, we disagree with employer's assertion that the Goodyear decision places a "burden on employers to continuously verify with each physician on a panel that the physician is still in practice." One of the purposes of Code § 65.2-603 is to "restore the employee's good health 'so that he may return to useful employment as soon as possible.'" Richmond Mem'l Hosp. v. Allen, 3 Va. App. 314, 318, 349 S.E.2d 419, 422 (1986) (addressing former Code § 65.1-88). It would defeat the purpose of the statute to provide an injured employee with the names of physicians who are not practicing medicine and who would therefore be unable to assist in returning the employee to useful employment. Furthermore, as noted in Goodyear, by making an appointment with only a clinic, an injured employee "would have . . . no assurance who his physician would . . . be[] when he arrived there." Goodyear, 9 Va. App. at 130, 384 S.E.2d at 339. Accordingly, we disagree with employer's assertion that it is a "burden" for

employers to determine that the physicians whose names they provide on a panel of physicians are "still in practice."

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>