**Salem**

GOODYEAR TIRE & RUBBER CO., et al.

v.

JACKIE PIERCE

No. 1053-86

Decided December 15, 1987

376

COUNSEL

James A.L. Daniel (Martha White Medley, Meade, Tate & Daniel, P.C., on brief), for appellant.

D. Thomas Blair (Stephen G. Bass, Carter, Craig & Bass, P.C., on brief), for appellee.

OPINION

**MOON, J.** — Goodyear Tire & Rubber Company (Goodyear) appeals an Industrial Commission award of temporary total disability benefits to Jackie Pierce, alleging that the award is not supported by credible evidence. Goodyear contends that Pierce: (1) failed to prove that he sustained a compensable injury arising out of his employment; and (2) was not justified in seeking medical treatment from a chiropractor who was not on Goodyear's panel of authorized physicians. The deputy commissioner found that due to Pierce's argumentative and evasive nature at the hearing he was not a credible witness. Hence, the deputy commissioner denied Pierce's claim because Pierce did not prove that he suffered a compensable injury. The full commission reversed without hearing the parties or any additional evidence, and stated merely that the deputy commissioner's finding that claimant was not a credible witness "is not supported by the record."

Although we do not agree with Goodyear's contention that a deputy commissioner's determination of a witness' credibility is binding, as a matter of law, upon the full commission, we believe the finding may not be arbitrarily disregarded unless it is evident from the record that there existed some basis for the commission's different interpretation of the witness' credibility. However, because the full commission did not prepare an adequate "statement of the findings of fact, rulings of law and other matters pertinent to the questions at issue," Code § 65.1-97, we are unable to determine what specific facts the commission relied upon in finding that Pierce sustained a compensable injury or that he was refused a panel of physicians. Therefore, we remand the case to the full commission for specific findings of fact, as opposed to a mere recitation of the evidence.

## I. The Evidence

The Industrial Commission's duty was to determine if Pierce proved by a preponderance of the evidence that he sustained a compensable injury and also if the evidence established that Goodyear informed him about a panel of authorized treating physicians. If the commission could not determine how the accident happened, it necessarily had to deny benefits to Pierce because he had the burden of proof on that issue. *Winegar v. International Telephone & Telegraph*, 1 Va. App. 260, 261, 337 S.E.2d 760, 760 (1985). On the other hand, if the commission found that Pierce suffered a compensable injury and that Goodyear did not offer Pierce a panel of physicians, then it would have had to order Goodyear to pay for a treating physician of Pierce's own choosing. *See Davis v. Brown & Williamson Tobacco Co.*, 3 Va. App. 123, 126, 348 S.E.2d 420, 421 (1986).

Conflicting testimony was presented in almost every aspect of this case. At the hearing, Pierce, a "tire builder" for Goodyear, testified that while working on October 23, 1985, he attempted to pick up a heavy tire component as he knelt over and immediately felt a sharp pain in his back, causing him to drop the part. Under these circumstances, Pierce's testimony established that he suffered a compensable injury. *See Russell Loungewear v. Gray*, 2 Va. App. 90, 341 S.E.2d 824 (1986). This testimony, however, apparently contradicted Pierce's first report and Goodyear's first recorded report of the accident, which Pierce signed the same day

of the injury. The reports indicated that while working with the tires, Pierce bent over without lifting anything and felt a pain in his back. The hospital pass issued to Pierce contained a description of the accident recorded by his foreman and signed by Pierce: "Lower central back hurt - picked up section and applied to drum. Reached down to get another and felt a pain." If the injury occurred in the manner described in these reports, arguably a compensable injury was not established. *See Richmond Memorial Hospital v. Crane,* 222 Va. 283, 278 S.E.2d 877 (1981); *Memorial Hospital v. Hairston,* 2 Va. App. 677, 347 S.E.2d 527 (1986). However, Pierce denied that the hospital pass contained the last sentence of the quoted language when he signed it.

Frances Ann Helms, a registered nursed employed by Goodyear, who first saw Pierce at the plant hospital, also contradicted Pierce's version of the accident. Helms testified in her deposition that Pierce, on the day of the alleged injury, claimed that when he "reached down," he "caught a sharp pain in the low or lower lumbar." She further testified that Pierce later returned to regular work that same day. Pierce also denied making these statements to Helms.

On October 28, 1985, Pierce returned to the plant hospital and asked to see a doctor because he was experiencing continued back pain. Helms sent Pierce by taxi to the company physician, Dr. Drake Pritchett, who gave Pierce an injection of Decadron and a prescription. Pierce returned to regular work the next day, October 29, 1985, but returned to Nurse Helms and requested to see Dr. Pritchett again. Because the doctor's office was closed at that hour, Helms gave Pierce a pass to go home. On October 31, 1985, Pierce telephoned Marion Abbott, head nurse at the employer's plant hospital, and advised her that "he had gone to see a chiropractor on his own," and that the chiropractor, Dr. Stephen Saunders, was keeping him out of work effective October 30, 1985, through November 4, 1985. In her deposition, Nurse Abbott testified that she did not authorize treatment by Saunders. Pierce's only explanation for seeking the treatment by a chiropractor was that he had simply gone to see Dr. Saunders "on his own."

On November 8, 1985, Pierce returned to the Goodyear plant and told Abbott that he wanted to choose Dr. Saunders, his chiropractor, as his physician. She testified that she advised Pierce to

see either an orthopedist, a neurologist, or a neurosurgeon and she explained to Pierce that Goodyear had a panel of physicians who treated employees in workers' compensation matters. She offered to make Pierce an appointment with any doctor listed on the panel. Abbott also testified that the list of authorized physicians was posted in the company hospital and throughout the plant. However, she testified that Pierce would not permit her to make such an appointment, stating that he wished to have Dr. Saunders as his physician.

Pierce denied almost every aspect of Abbott's testimony and claimed he had never heard that Goodyear had a panel of physicians. However, he conceded on cross examination that Abbott was a nice person and stated: "She tells me things that I don't know . . . . She said, 'that Goodyear have doctors . . . . Several doctors other than Dr. Pritchett'."

On January 13, 1986, Pierce again saw Abbott and, for a reason not explained in the record, insisted that she note in his file that he hurt himself again as he "was taking a section out of the drum and felt a sharp pain on bending." She further stated: "He said this was the same area that he had hurt himself before, the same injury. He did not want any treatment, he did not want anything except for me to put it on his record. He was very insistent that this be placed on his record."

Abbott also testified that a year previous to this incident, on May 30, 1984, Pierce came into the office to report a back strain he suffered in April, 1984. Pierce also denied he strained his back at that time.

Pierce filed for disability benefits for the periods October 30, 1985, to November 20, 1985, and January 14, 1986, to February 28, 1986. Pierce testified before the deputy commissioner in a hearing of March 20, 1986. The deputy commissioner, in denying Pierce's claim for benefits, stated:

[Pierce was] repeatedly evasive in his answers to the extent that he gave the clear appearance of intentionally trying to avoid giving a direct response to an uncomplicated question. [Pierce] . . . accomplished this by his argumentative answers to such question by defense counsel. This evasiveness which was clearly apparent to this Hearing Commissioner,

coupled with the inconsistent testimony of the plaintiff as contrasted to his signed statement on the hospital pass . . . raises a substantial question as to the credibility of this plaintiff. In view of the repeated evasive answers of this plaintiff coupled with his demeanor on the stand, we find that his testimony does not carry the credibility necessary to establish that the event he testified to under oath is the event which actually occurred.

In reversing the denial of compensation, the full commission stated: "The claimant's testimony appears to be credible and is corroborated by the medical reports. The Deputy Commissioner's finding that the claimant was repeatedly evasive and argumentative in his answers is not supported by the record and we so find." The full commission, with one dissent, also found that a medical panel was not offered to Pierce and ordered Goodyear to pay for the services of Dr. Saunders, the chiropractor.

## II. The Credibility Issue

Goodyear's primary argument is that once the issue of a witness' credibility has been decided by the deputy commissioner hearing the case *ore tenus*, this finding binds the full commission.

Code § 65.1-98 provides that, on appeal, the award of the commission "shall be conclusive and binding as to all questions of fact." Where the findings of fact of the Industrial Commission are based upon credible evidence, such findings will be sustained on appeal. *Fairfax Hospital v. DeLaFleur*, 221 Va. 406, 410, 270 S.E.2d 720, 722 (1980). Conversely, where there is no credible evidence to support the findings, the findings are not binding and the question then becomes a question of law. *Great Atlantic & Pacific Tea Co. v. Robertson*, 218 Va. 1051, 1053, 243 S.E.2d 234, 235 (1978). In this case, all parties agree that they presented conflicting evidence and that if the commission found Pierce to be credible, his testimony would support a finding that he was entitled to compensation. The question presented, thus, is whether Pierce's evidence was sufficiently credible to support his award, despite the deputy commissioner's clear finding that Pierce's appearance and demeanor demonstrated he was not a credible witness.

In finding that Pierce was not a credible witness the deputy commissioner specifically cited his observation of Pierce's appearance and demeanor, as well as contradictions between Pierce's testimony, his signed statement, and the testimony of other witnesses. Because Pierce had the burden of proving he suffered an injury arising out of his employment, the deputy commissioner denied his claim. The commission could have heard the evidence, but did not. It merely stated that it disagreed with the deputy commissioner's assessment that Pierce was argumentative and evasive and, therefore, not a credible witness.

■ A witness' credibility may, in part, be determined by his appearance and demeanor upon testifying. *See Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949). Due process of law requires that, where credibility is at issue, the administrative agency making the finding must have the benefit of the impressions of persons who heard the testimony of the witness. *See Crow v. Industrial Commission*, 104 Utah 333, 337, 140 P.2d 321, 326 (1943); *Shawley v. Industrial Commission*, 16 Wis. 2d 535, 541, 114 N.W.2d 872, 876 (1962).

■ Traditional principles dictate, both in the civil and criminal law, that the determination of a witness' credibility is within the fact finder's exclusive purview because he has the best opportunity to observe the appearance and demeanor of the witness.

> The credibility of witnesses is a question exclusively for the jury, and where a number of witnesses testify directly opposite to each other, the jury is not bound to regard the weight of the evidence as equally balanced, they have the right to determine from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence, or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit, and to give credit accordingly.

*Zirkle*, 189 Va. at 870, 55 S.E.2d at 29.

■ In civil cases involving a commissioner in chancery, the commissioner's findings do not carry the weight of a jury verdict, "[y]et when based upon testimony *taken in his presence*, his factual finding is entitled to much weight and should not be disturbed

unless unsupported by the evidence." *Mitchell v. Cox*, 189 Va. 236, 243, 52 S.E.2d 105, 109 (1949)(emphasis added); *Jamison v. Jamison*, 3 Va. App. 644, 645-46, 352 S.E.2d 719, 720 (1987). "Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand." *Hill v. Hill*, 227 Va. 569, 577, 318 S.E.2d 292, 297 (1984).

■ "The judgment of a trial court sitting in equity, when based upon an *ore tenus* hearing, will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Box v. Talley*, 1 Va. App. 289, 293, 338 S.E.2d 349, 351 (1986). Conversely, "a decree based solely on depositions is not as conclusive on appellate review as one based on evidence heard *ore tenus*." *Collier v. Collier*, 2 Va. App. 125, 127, 341 S.E.2d 827, 828 (1986).

The commission itself has recognized this tradition in *Wills v. Green*, 56 O.I.C. 340, 342 (1975), when it deferred to the hearing officer and stated: "The question here essentially is one of the credibility of the claimant and the trier of fact has the best opportunity to make that determination."

■ Therefore, we conclude that a specific, recorded observation of a key witness' demeanor or appearance in relation to credibility is an aspect of the hearing that the commission may not arbitrarily disregard. When the commission does not follow such a finding, the record should indicate that the commission did not arbitrarily ignore the finding. We do not, however, hold that the deputy commissioner's findings as to credibility necessarily bind the commission. Code § 65.1-96 provides that the initial hearing may be by the commission or any of its members or deputies, who "shall decide the issues in a summary manner, and shall make an award carrying out the decision." In addition, Code § 65.1-97 provides that upon an application for review of an award, if the first hearing was not held before the full commission, the full commission:

shall review the evidence or, if deemed advisable, as soon as practicable, *hear the parties at issue, their representatives and witnesses* and shall make an award which, together with a statement of the findings of fact, rulings of law and other matters pertinent to the questions at issue, shall be filed with

the record of the proceedings.

(emphasis added).

Therefore, the commission has the authority to hear the case *de novo*. If the commission hears the case *de novo* it will not be bound by the findings of the deputy. But when the full commission does not hear the witness' testimony, the deputy's observations about witness credibility become a part of the evidence which the commission may not arbitrarily ignore and dismiss.

■ The law does not require the commission to state its reasons for believing one witness over another. *See Stonega Coke & Coal Co. v. Sutherland*, 136 Va. 489, 495, 118 S.E. 133, 134 (1923). Nevertheless, the commission has historically sought to explain the reasons for its decisions. We believe that a claimant seeking workers' compensation or an employer denying liability should know why the commission decided as it did. In *Stonega*, the Supreme Court stated that although the commission was not required to state its reasons, the "better practice" was to state the evidence upon which it relied. *Id.* Where a witness' credibility is the main reason for granting or denying benefits, the opinion that gives reasons for other decisions would logically be expected to address that issue.

■ We do not hold as a matter of law that the commission must hear evidence in order to reverse a decision on the grounds that the deputy commissioner incorrectly assessed a witness' credibility. However, we believe that when it does reverse a decision on such a basis, it should be evident from the record how the commission resolved the credibility issue consistent with the deputy's observations. When the deputy commissioner's finding of credibility is based, in whole or in part, upon the claimant's appearance and demeanor at the hearing, the commission may have difficulty reversing that finding without recalling the witness. On the other hand, if the deputy commissioner's determination of credibility is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the full commission as by the deputy. Only when the deputy's finding as to credibility is specifically based upon the witness' appearance and demeanor do we believe that a due process question may be raised.

### III. Findings of Fact

In order to sufficiently scrutinize any award, we must have an adequate "statement of the findings of fact, rulings of law and other matters pertinent to the questions at issue" for a proper review. Code § 65.1-97.

> [I]f the findings and supporting evidence are not clearly laid before the reviewing court, its review function becomes meaningless. . . . The *right* to find the facts carries with it a *duty* to find the facts.
>
> * * *
>
> It is not enough for the Commission to announce the conclusion that the injury did or did not arise out of and in the course of employment, or was not job related, or that there was no accident, or that claimant was not incompetent, or had a heart attack, or was or was not disabled, or was intoxicated, or had deviated from the course of his employment. It must find as facts the basic component elements of which these conclusions are constituted . . . .

3 A. Larson, *Workmen's Compensation Law* § 80.13 (1983) (emphasis added) (citations omitted).

Other jurisdictions have emphasized the importance of a clearly drafted commission's opinion. The Indiana Supreme Court stated:

> [F]indings of basic fact must reveal the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim. The "finding of ultimate fact" is the *ultimate* factual conclusion regarding the particular claim before the Board. . . . The finding of ultimate fact may be couched in the legal terms and definitions which govern the particular case. In contrast, the specific findings of basic fact must reveal the Board's determination of various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board. The findings must be specific enough to provide the reader with an understanding of the Board's reasons, based on the evidence, for its finding of *ultimate* fact.

*Perez v. United States Steel Corp.*, 426 N.E.2d 29, 33 (Ind. 1981) (emphasis in original). It further outlined what it considered to be an adequate statement of the findings of fact:

> It is a simple, straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. *It is stated in sufficient relevant detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happened.* And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law.

*Id.* (quoting *Whispering Pines Home for Senior Citizens v. Nicalek*, 333 N.E.2d 324, 326 (Ind. Ct. App. 1975) (White, J., dissenting)) (emphasis supplied); *see also Redden v. Montgomery County*, 270 Md. 668, 684-85, 313 A.2d 481, 490 (1974).

■ The Supreme Court of Virginia has held that a statement of the evidence does not satisfy the requirements of a statement of fact. *See Petersburg Gas Co. v. Petersburg*, 132 Va. 82, 88-89, 110 S.E. 533, 535 (1922); *see also Appalachian Power Co. v. Commonwealth*, 132 Va. 1, 110 S.E. 360 (1922).

Likewise, we must have an opinion from the commission that makes specific findings of fact so that we may properly review the award when appealed to this Court.

### IV. Analysis of the Facts at Bar

In the present case, witnesses gave two versions of how Pierce may have injured his back. The commissioner's opinion uses such statements as "the claimant testified," and "Dr. Saunders reported." Nowhere does the commission make specific findings of fact.

If the commission believes Pierce sustained a compensable injury, its opinion should describe how the accident occurred. Regarding Pierce's credibility, the commission merely states: "The claimant's testimony appears to be credible and is corroborated by the medical reports. The Deputy Commissioner's finding that the

claimant was repeatedly evasive and argumentative in his answers is not supported by the record and we so find."

Pierce's cross examination was replete with points in which the deputy commissioner reasonably could have said that Pierce was argumentative with counsel. Pierce seldom gave a direct answer. Pierce repeatedly claimed not to understand the question. We do not know whether Pierce was purposely evasive or truly did not understand defense counsel. Moreover, we do not know whether defense counsel was at fault in confusing Pierce. However, the simple statement by the commission that the witness was not evasive and argumentative belies the record and the findings of the hearing officer who was present. It is devoid of any rationale which would overcome the observations of the hearing officer who specifically noticed Pierce's demeanor. We believe that, in this instance, the deputy commissioner was in a better position to determine whether or not the witness was evasive. Even accepting the full commission's opinion about Pierce's evasiveness, there remains the finding with regard to demeanor that the commission did not address.

Where the commission reverses such a significant finding of fact, the commission's opinion should demonstrate how the commission could have found Pierce more credible than the unimpeached witnesses who contradicted him. When the commission offers no rationale for its reversal, then evidence to support the award is lacking.

Therefore, we remand the case to the full commission to reconsider the case pursuant to Code § 65.1-97 and to make specific findings of fact as to how the accident occurred. We do not here decide whether the evidence was sufficient to support an award in favor of Pierce. We will await a statement of facts specifically detailing how the commission decides Pierce's injury, if any, occurred, and the specific facts surrounding Pierce's selection of his chiropractor as his treating physician.

In remanding the case, we are compelled to point out several misstatements of the evidence that appear in the majority opinion. First, the opinion states: "There is no history of prior back injury or complaints." However, Goodyear's records show that Pierce made a complaint of a back injury in May, 1984, even though Pierce denied making the complaint.

Secondly, the opinion states that on October 23, 1985, Pierce "returned to light work although restrictions, if any are not before us." We find this statement contrary to the record. Frances Ann Helms, a registered nurse, employed by Goodyear, testified that Pierce came to her in the plant hospital between 9:35 a.m. and 9:45 a.m. on October 23, 1985, and presented to her the pass quoted above which he had signed. She also stated: "He claimed he was putting a drum back together when he reached down to get a section, caught a sharp pain in the low lumbar." She further stated:

> I gave him a neurological check which consisted of heel and toe walk, and lifting and bending each leg, one at a time and there was negative pain to both of these, but he did complain of pain when he bent down to touch his toes . . . . I gave him some medication, some Dolobid for pain and Robexin, a muscle relaxer and I noticed that he appeared to be in no discomfort when he bent over at the water fountain to get a drink of water . . . . He was to return when necessary and he went to *regular work*.

(emphasis added).

On October 29, 1985, according to Helms, Pierce was taken off his regular work and put on light work. Finally, we are concerned about the significance attributed to one consideration mentioned in the commission's opinion. In determining that Pierce suffered a compensable injury, the commission stated: "There is no evidence that the claimant's back complaints were caused by anything other than the work in which he was engaged on October 23, 1985." However, the burden was not upon the employer to prove that Pierce's injury did not arise out of his employment; the burden of proof was upon Pierce to prove how the injury occurred and that it is compensable. *See Winegar*, 1 Va. App. at 261, 337 S.E.2d at 760.

Accordingly, we reverse the award of the commission and remand for proceedings consistent with this opinion.

*Reversed and remanded.*

Koontz, C.J., and Keenan, J., concurred.