THE KROGER COMPANY
and
TRANSPORTATION INSURANCE COMPANY

v.

JAMES C. MORRIS

No. 1679-91-3

Decided March 31, 1992

234

COUNSEL

James C. Joyce, Jr. (Melissa Warner Scoggins; Gentry, Locke, Rakes & Moore, on brief), for appellants.

Jim H. Guynn, Jr. (Parvin, Wilson, Barnett & Hopper, P.C., on brief), for appellee.

OPINION

**WILLIS, J.**—The appellants, Kroger Company and Transportation Insurance Company (employer), contend that the Workers' Compensation Commission* erred in reversing the findings of the deputy commissioner and in awarding temporary total benefits to James C. Morris (claimant). We find no error and affirm the decision of the commission.

James C. Morris was a tractor-trailer driver for Kroger Company. Morris testified that on September 3, 1990, he injured his shoulder while unloading milk pans from his truck to a Kroger store. Using a two-wheel hand truck, he was moving a stack of six cartons of milk, twenty-four gallons, onto a metal pan that holds four stacks. While pushing the stack from the hand truck to the pan, he experienced sudden shoulder pain. A knot developed shortly afterward. Morris testified that he was "pushing the milk from the two-wheeler up on the pan" and hurt his shoulder when he gave the stack "a shove to sling it up on there." He reported the injury to other personnel who were working with him and to

---

* Formerly the Industrial Commission of Virginia.

the assistant manager of the store. He sought treatment two days later from a chiropractor, Dr. LaBarbera. Between the time of the injury and seeking treatment he did not work.

Dr. LaBarbera noted as history that "[p]atient stated that he injured himself on-the-job." He diagnosed radiculitis of the left shoulder which was causally related to the work injury. Kroger advised Morris to see a Dr. Watts. Dr. Watts noted, "[p]atient states that he was unloading milk and strained his left shoulder."

On referral from Dr. Watts, Morris saw Dr. Spetzler, an orthopedic surgeon, on September 11, 1990. Dr. Spetzler reported:

He stated that on 9-3-90 he noted a mass over his left AC joint. He says that he does not remember any one accident but he noted some soreness with pushing milk on the buggies . . . . He has a small goose egg over the AC joint which is cystic . . . . A review of his X-ray reveals that he has degenerative changes of both AC joints . . . . It is my impression that he has an AC joint arthrosis on both sides and he has a cystic swelling over the left AC joint. I suspect that this is not due to any one incident or trauma but is a sequel to stress over a longer period of time in an arthritic joint . . . . I am also concerned that he has a rotator cuff tear on the left.

On October 4, 1990, Dr. Spetzler removed the cyst and repaired the rotator cuff. On November 29, 1990, Dr. Spetzler reported:

[H]is problem in the shoulder is of a chronic nature and he had a large rotator cuff tear which was well retracted and scarred down which is an indication of an old injury and not a relatively new injury. He also has an AC joint arthrosis which goes along with chronic degenerative changes. I did tell Mr. Morris that his work related incident is really an aggravation of a chronic problem rather than any one incident of trauma.

A chronic silent tear can become symptomatic through an aggravation and I think that this is what has occurred in Mr. Morris' case.

The deputy commissioner found that Morris lacked credibility because of the variation between the specific account of injury to which he testified and the vaguer accounts reported by his doctors to have been given them by him. The deputy commissioner further found that the evidence failed to prove that the incident described by Morris caused his subsequent disability. The full commission reversed and awarded Morris temporary total disability benefits.

On appeal, the employer contends that the full commission made no finding regarding Morris's credibility and arbitrarily ignored the findings of credibility by the deputy commissioner. We disagree.

When the full commission reviews a deputy commissioner's findings of credibility, it must first consider the basis of those findings. If the deputy commissioner's finding of credibility is based, in whole or in part, upon the claimant's appearance and demeanor at the hearing, the commission may have difficulty reversing that finding without recalling the witness. *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 383, 363 S.E.2d 433, 438 (1987). A specific recorded observation of a key witness's demeanor or appearance in relation to credibility is an aspect of the hearing that the commission may not arbitrarily disregard. *Id.* However, if the deputy commissioner's determination of credibility is based upon the substance of the testimony rather than upon the witness's demeanor, such a finding is as determinable by the full commission as by the deputy. *Id.* The latter is the case here.

Deputy Commissioner Costa found it hard to believe that the claimant could provide specific details of a particular event during direct examination, yet had not provided this same information to the various treating physicians. Deputy Commissioner Costa's determination of Morris's credibility was based on the evidence and the substance of Morris's testimony, rather than on Morris's appearance or demeanor. Therefore, the full commission could make its own credibility determination. *Id.* Its finding is supported by the evidence.

The employer next contends that Morris failed to carry his burden of proving a causal relationship between his claimed industrial accident and his shoulder injury. This court, in reviewing a decision of the Virginia Workers' Compensation Commission, will not disturb the commission's findings so long as credible evidence

supports those findings, even though the evidence would support a contrary finding. *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). Our review of the record discloses that the evidence supports the finding of the full commission.

Morris described a specific incident, in and during the course of his employment, which caused his injury. He testified that he sustained the injury while at work unloading milk from his truck. He described it as sudden left shoulder pain. He promptly reported it to the assistant manager of the store and to other personnel who were present. Dr. LaBarbera, the first doctor to see Morris, noted as history, "[p]atient stated that he injured himself on-the-job." Dr. Watt's report of September 10, 1990, also substantiates Morris's testimony: "Patient states that he was unloading milk and strained his left shoulder." Dr. Spetzler noted in his November 29, 1990 report that "[a] chronic silent tear can become symptomatic through an aggravation and I think that this is what has occurred in Mr. Morris' case, . . ." The full commission found these reports to be consistent with Morris's testimony and granted him benefits.

We find no error and affirm the judgment of the Virginia Workers' Compensation Commission.

*Affirmed.*

Baker, J., and Coleman, J., concurred.