COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Fitzpatrick
Argued by Teleconferencing


TOWN OF JONESVILLE MAINTENANCE DEPARTMENT
and
FIDELITY & CASUALTY COMPANY OF NEW YORK

v.          Record No. 0194-95-3      MEMORANDUM OPINION[*] BY
                                      JUDGE SAM W. COLEMAN III
ROBERT H. SWORD                            FEBRUARY 20, 1996


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION


        Kathryn Spruill Lingle (Midkiff & Hiner,
        P.C., on brief), for appellants.

        Stephen J. Kalista (Lonnie L. Kern, on
        brief), for appellee.


    In this workers' compensation case, the Town of Jonesville

contends that the commission erred in awarding Robert H. Sword,

the claimant, temporary total disability benefits.  Specifically,

Jonesville argues that the commission erred by rejecting the

deputy commissioner's findings as to the credibility of witnesses

without articulating its reasons or rationale, finding that the

claimant sustained an injury by accident arising in the course of

his employment, and finding that the claimant was totally

disabled and had no obligation to market his residual capacity.

We find no error and affirm the commission's award.

    The claimant was employed by the Jonesville Maintenance

Department as an assistant superintendent, and his brother, P.C.

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Sword, was employed as the superintendent. On March 3, 1993, the claimant, P.C., Burl Nida, and Dennis Collins were digging a ditch in order to install a new sewer line. According to the claimant, P.C. directed him as he dug the ditch with a backhoe. The claimant testified that after he hit existing sewer lines while digging with the backhoe, P.C. stated, "[l]ook at that damned fool," and made other comments that the claimant could not hear over the backhoe's motor. The claimant climbed down from the backhoe and walked towards P.C. to ask him what he had said. P.C. was holding a shovel, and the claimant warned P.C. not to hit him with the shovel. According to the claimant, P.C. then hit him three or four times in the head with his fists.

The claimant testified that he and P.C. had experienced some problems at work prior to this incident and that P.C. called him names on a daily basis. However, the claimant denied that he resented the fact that P.C. was his supervisor. He also denied that he walked towards P.C. in a brisk or rapid manner after leaving the backhoe and that he raised his fist or attempted to hit P.C.

James Parks witnessed the confrontation between the claimant and P.C. from his home, which is located approximately one to two hundred feet from where the altercation occurred. Parks testified that P.C. was cursing the claimant and that the claimant did not raise his fist at P.C. However, Parks admitted that he could not hear specifically what the claimant and P.C.

were saying.

According to P.C., the altercation began because the claimant cursed at him and he told the claimant, "[y]ou're crazy." The claimant then jumped off the backhoe, cursed him again, and came at him. The claimant swung his right hand at P.C., and P.C. responded by hitting the claimant. P.C. stated that he hit the claimant two or three more times because the claimant continued to struggle with him. He denied cursing the claimant or calling him names on the day of the fight, and also asserted that the claimant did not follow instructions at work and had cursed him on several occasions prior to the day of the fight.

Burl Nida testified that the claimant cursed at P.C. and then jumped off the backhoe and "went toward him." Nida stated that he heard the claimant curse P.C. again after P.C. stated, "[y]ou're crazy." Nida testified that he was sitting behind P.C. and saw P.C.'s hand come up as the claimant approached, but did not see the claimant raise his fist or swing at P.C. After P.C. hit him, the claimant grabbed a pipe from a scrap heap. P.C. picked up a shovel and told the claimant to put the pipe down. Nida testified that he believed that the claimant had started the fight.

Dennis Collins was working in the ditch and witnessed only a portion of the confrontation. Although he heard P.C. say something to the claimant, he could not hear exactly what was

said because of the noise from the backhoe.  Collins stated that the claimant appeared angry as he exited the backhoe and approached P.C., but admitted that he did not see the claimant swing at P.C.

After hearing all of the testimony, the deputy commissioner held that James Parks' testimony was incredible and unpersuasive because Parks claimed that he could hear what the claimant and P.C. were saying despite the noise of the backhoe while Dennis Collins testified that he could not hear the conversation even though he was much closer.  Conversely, based upon his "observation of the witnesses," the deputy commissioner found P.C., Nida, and Collins to be credible witnesses.  Accordingly, the deputy commissioner held that the claimant provoked the fight with P.C.

On review, the commission concluded that "the Deputy Commissioner did not find that the claimant provoked the confrontation with anything more than words."  The commission held that verbal conduct does not foreclose an award under the Workers' Compensation Act (Act) and reversed the deputy commissioner's decision.

## I. Credibility Determination

"[A] specific, recorded observation of a key witness' demeanor or appearance in relation to credibility is an aspect of the hearing that the commission may not arbitrarily disregard." Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 382, 363

S.E.2d 433, 437 (1987), appeal after remand, 9 Va. App. 120, 127, 384 S.E.2d 333, 335 (1989). Here, the deputy commissioner discounted James Parks' testimony, but found that P.C. Sword, Burl Nida, and Dennis Collins were all credible witnesses. Therefore, Jonesville contends that by awarding the claimant benefits, the commission reversed the deputy commissioner's credibility findings without providing any reasons or rationale.

Pierce does not provide that the commission must articulate a reason for reversing every credibility determination the deputy commissioner makes. Rather, Pierce distinguishes between credibility determinations based upon specific observations of appearance and demeanor and those based upon the actual substance of the testimony.

> When the deputy commissioner's finding of credibility is based, in whole or in part, upon the [witness's] appearance and demeanor at the hearing, the commission may have difficulty reversing that finding without recalling the witness. On the other hand, if the deputy commissioner's determination of credibility is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the full commission as by the deputy.

Pierce, 5 Va. App. at 383, 363 S.E.2d at 438. Therefore, the commission has no duty to explain its decision favoring the testimony of one witness over another "[a]bsent a specific recorded observation regarding the behavior, demeanor or appearance of [the witnesses]." Bullion Hollow Enterps. v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992); see also Kroger

Co. v. Morris, 14 Va. App. 233, 236, 415 S.E.2d 879, 881 (1992).

Here, the deputy commissioner found James Parks' testimony "incredible and unpersuasive" because "it does not comport with normal events that [Parks] could hear what was being said two hundred feet away when Dennis Collins was only a few feet away and . . . could not hear the conversation because the backhoe motor was running." This explanation focuses on the substance of Parks' testimony; the deputy commissioner did not record any observation of Parks' demeanor or appearance that negatively impacted his credibility. And although the deputy commissioner stated that "from [his] observation of the witnesses," he found P.C. Sword, Burl Nida, and Dennis Collins credible, he did not make a "specific, recorded observation" of their conduct or demeanor which would have been a basis for determining credibility that would only have been available and observable by the hearing officer. Lane, 14 Va. App. at 729, 418 S.E.2d at 907.

> The principle set forth in Pierce does not make the deputy commissioner's credibility findings unreviewable by the commission. Rather, it merely requires the commission to articulate its reasons for reversing a specific credibility determination of the deputy commissioner when that determination is based upon a recorded observation of the demeanor or appearance of a witness. In short, the rule in Pierce prevents the commission from arbitrarily disregarding an explicit credibility finding of the deputy commissioner.

Id. (emphasis added); see also Morris, 14 Va. App. at 236, 415

- 6 -

S.E.2d at 881.  Because the deputy commissioner did not base his credibility findings on any specific recorded observations of demeanor or appearance, "the full commission could make its own credibility determination."  Morris, 14 Va. App. at 236, 415 S.E.2d at 881.  Therefore, the commission did not err by reversing the deputy commissioner's decision without providing a rationale or reason for disregarding the deputy commissioner's credibility findings,[1] and its findings of fact will not be disturbed on appeal if supported by credible evidence.  See Rose v. Red's Hitch & Trailer Servs., Inc., 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990).

The claimant denied that he approached P.C. with a "raised fist," and this denial was corroborated by Parks, Nida, and Collins.  Conversely, no witness could confirm P.C.'s claim that the claimant attempted to hit him.  Although Nida testified that he saw "Preston's arm come up" before P.C. hit the claimant, he admitted that he did not see the claimant attempt to strike P.C.

---

[1]It is not clear from the record that the commission rejected the deputy commissioner's credibility determinations. The commission did not explicitly reject the deputy commissioner's findings that Parks' testimony was not credible and P.C.'s, Nida's, and Collins' testimony were credible, but based its decision on the grounds that the evidence did not show "that the claimant provoked the confrontation with anything more than words."  See Birdsong Peanut Co. v. Cowling, 8 Va. App. 274, 278, 381 S.E.2d 24, 27 (1989).  Nonetheless, the commission did find that P.C. "testified vaguely and unconvincingly" and relied in part on Parks' statement "that the claimant made no threatening moves toward the supervisor."  Therefore, we will assume for purposes of this appeal that the commission disregarded the deputy commissioner's credibility determinations.

Collins testified that he saw the claimant approach P.C. and witnessed P.C. strike the claimant "three or four" times, but did not see the claimant "throw any blows" at P.C. Therefore, we hold that the commission's finding that the claimant did not provoke P.C. with anything more than words is supported by credible evidence.

## II. Accident

In Virginia, an assault on an employee by a co-worker or third party may qualify as an accident arising in the course of employment.  See A.N. Campbell & Co. v. Messenger, 171 Va. 374, 377, 199 S.E. 511, 513 (1938); Farmers Mfg. Co. v. Warfel, 144 Va. 98, 101-03, 131 S.E. 240, 241 (1926).  Injuries sustained in a fight with another employee are compensable so long as the fight "was not a mere personal matter, but grew out of a quarrel over the manner of conducting the employer's business."  Warfel, 144 Va. at 104, 131 S.E. at 241.  However, the injuries are not compensable if the evidence shows that the claimant was the aggressor.  Id. (holding that the evidence must show that "the injured employee was not responsible for the assault").

"[T]he great majority [of cases from other jurisdictions] agree that words alone, however inflammatory, are not such aggression as to deprive claimant of compensation."  1 Arthur Larson, Workmen's Compensation Law § 11.15(c), at 249 (1995); see also Warfel, 144 Va. at 103, 131 S.E. at 241 (citing a New York case which held "that the use of the irritating words by the employee was no justification for the assault").  However, because "there is generally no easily distinguishable line between aggressor and innocent victim in workplace altercations," Geeslin v. Workmen's Compensation Commissioner, 294 S.E.2d 150, 153 (W. Va. 1982); see also Larson, Workmen's Compensation Law § 11.15(c), at 250-51, we decline to adopt a bright-line rule

that words alone are either sufficient or insufficient to constitute aggression.  Rather, we hold that whether a claimant's verbal conduct, standing alone, is sufficient to preclude compensation depends upon the nature of the words and the context in which they are spoken.  Cf. Kennedy's Piggly Wiggly Stores, Inc. v. Cooper, 14 Va. App. 701, 706, 419 S.E.2d 278, 281 (1992). Here, the evidence is clear that the altercation between the claimant and P.C. resulted from a quarrel over the claimant's performance of his job.  In addition, the record reveals that the claimant did not physically or verbally threaten P.C.; P.C.'s own testimony reveals that the claimant only cursed at him. Therefore, we hold that, under the circumstances of this case, the claimant was not responsible for the assault committed against him and that his injuries resulting from the assault are compensable under the Act.

### III. Total Disability

Jonesville further contends that the commission erred by finding that the claimant was "effectively totally disabled from March 4, 1993," and that the claimant did not show that he made reasonable efforts to market his residual work capacity.  In determining whether the commission's finding is supported by credible evidence, we must view the evidence in the light most favorable to the claimant.  Georgia Pacific Corp. v. Dancy, 17 Va. App. 128, 133-34, 435 S.E.2d 898, 901 (1993).

The claimant testified that as a result of the assault his

left arm "gives [him] trouble," and he has "to sit and work [his] hand before [he] can even pull [his] pants up" in the morning. Dr. Stephen Irvin initially treated the claimant on March 4, 1993, and on March 25, 1993, stated that the claimant should not return to work until cleared by an orthopedist. Dr. Irvin referred the claimant to Dr. Daniel F. Klinar, an orthopedist, who examined the claimant on April 5, 1993, and noted that he suffered from "limited flexion, . . . rotation and extension in his neck." Although Dr. Klinar stated that he "asked [the claimant] to check into the possibility of light duty work, he also noted that "[a]pparently all the job options available for [the claimant] are heavy manual labor jobs and I think it is too early for him to perform these."[2] (Emphasis added.) Dr. Klinar also noted that the claimant "is [not] suitable for driving because he cannot rotate his head at this point."

Dr. Klinar examined the claimant again on May 10, 1993, and found that he still suffered from a "very limited range of motion." Consequently, Dr. Klinar recommended physical therapy and did not change the claimant's work restrictions. After several months of physical therapy, the claimant was referred to Dr. Ken W. Smith, who noted that the claimant continues "to complain of left arm pain and . . . has undergone a total of 66

---

[2]The conclusion that the claimant's job opportunities are limited is supported by the fact that the claimant is in his late fifties, has a limited educational background, and has worked at the same job for approximately thirty years.

treatments of physical therapy without relief."  Dr. Smith recommended surgery for the claimant.

We hold that credible evidence supports the commission's finding that the claimant was totally disabled.  Therefore, the claimant "is not required to prove that he made a reasonable effort to market his residual work capacity in order to receive temporary total disability benefits."  Id. at 134, 435 S.E.2d at 901.

For the foregoing reasons, we affirm the commission's award.

Affirmed.