COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Coleman and Elder
Argued at Salem, Virginia


BUCHANAN COUNTY PUBLIC SERVICE AUTHORITY
 and CINCINNATI INSURANCE COMPANY
                                    MEMORANDUM OPINION* BY
v.       Record No. 2809-95-3       JUDGE SAM W. COLEMAN III
                                        OCTOBER 15, 1996
CECIL D. ROBBINS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION
               Jim H. Guynn, Jr. (Guynn & Britt, P.C., on
               briefs), for appellants.

               Gerald F. Sharp (Browning, Lamie & Sharp,
               P.C., on brief), for appellee.


     In this workers' compensation case, Buchanan County Public

Service Authority (Buchanan County) contends that the commission

erred in awarding Cecil D. Robbins (claimant) temporary total

disability benefits.  Specifically, Buchanan County argues that

the commission erred in rejecting the deputy commissioner's

witness credibility findings and in concluding that credible

evidence supported the claimant's award.  We find no error and

affirm the commission's award.

     The claimant worked as a maintenance superintendent at

Buchanan County's water and sewer systems.  On March 13, 1995,

the claimant and two other employees, Bradley Vandyke and Jeff

Stiltner, were attempting to pry open the door to a pump station

using a chisel, screw driver, and slate bar when claimant alleged

     * Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

that he fell backwards, struck his head, and injured his neck.

At the hearing before the deputy commissioner, the claimant testified that "we started prying stuff on the door, trying to jerk and pull on the door at the same time and that's when I jerked back on -- on one occasion I jerked back . . . and I kind of felt like I . . . pulled something in my neck or shoulder but I . . . shrugged it off a little bit." He further testified that the screwdriver "jerked" and he "fell backward and hit [his] head." The two employees that were working with the claimant, Vandyke and Stiltner, testified and denied having seen the claimant fall and denied any knowledge of an accident.

Dr. Jim C. Brasfield, who had previously treated the claimant for cervical spine problems resulting from a 1989 work-related injury, examined the claimant on March 16, 1995. Dr. Brasfield noted that the results of the exam did not appear to be consistent with several of the claimant's complaints. Dr. Brasfield was skeptical of the claimant's complaint that he had received a neck injury and suggested that other motives might be in play. Dr. Brasfield reported that the claimant had previously requested of him that he "disable" the claimant. Accordingly, Dr. Brasfield arranged for the claimant to have a cervical and lumbar myelogram in order to more accurately evaluate his condition.

The myelogram revealed a "significant change in the 3rd cervical disc." Therefore, Dr. Brasfield confirmed that by

history the claimant had a neck injury, and as to its cause, he reported:

> [c]omparing today's myelogram/CT with that of 9-30-92, the third disk does look to be worse and therefore I think is symptomatic. Given the fact that his neck pain seemed to worsen rather acutely with his injury of 3-13-95, then I think that the 3-13-95 injury has to be considered a new injury with the resultant cervical 3 disk rupture being related to that. To summarize, the patient has a cervical 3 disk rupture, which I think is related to his new injury of 3-13-95.

All records prepared by Dr. Brasfield after the myelogram reflected his diagnosis that the ruptured disk was related to the claimant's workplace injury.

The deputy commissioner found that the claimant failed to prove by a preponderance of the evidence that he suffered an injury by accident arising out of and during the course of his employment. Specifically, the deputy commissioner found, "[a]fter personally observing the witnesses and their demeanor," that Stiltner and Vandyke were "credible witnesses," and that the claimant's testimony was not "of such weight to override the unequivocal testimony of [Stiltner] and [Vandyke]." Furthermore, the deputy commissioner noted that the emergency room physician inexplicably "did not record any circumstances concerning the March 13, 1995 incident but did make reference to claimant's previous injury and surgeries," and that the claimant's statements to the insurance carrier were inconsistent with his testimony in that in his interview with the carrier he could only

surmise that when he fell backward he had actually struck the ground.

On review, the full commission reversed the deputy commissioner and awarded the claimant temporary total disability benefits. The commission held that "[a]lthough the Deputy Commissioner found the employer's witnesses credible, their testimony that they were unaware of the accident at the time does not in itself disprove the employee's claim." Thus, the commission found that the deputy commissioner's denial of benefits and credibility determinations were based on weighing the facts and testimony in the record. According to the commission, the claimant's description of the March 13th accident was generally consistent, and that "the minor inconsistency relating to whether the claimant found dirt in his hair or bumped his head [was] not fatal to the claim." More important, however, the commission found that "Dr. Brasfield stated unequivocally that the C3 disk herniation was not present before the accident and was causally linked to the accident."

> [A] specific, recorded observation of a key witness' demeanor or appearance in relation to credibility is an aspect of the hearing that the commission may not arbitrarily disregard. When the commission does not follow such a finding, the record should indicate that the commission did not arbitrarily ignore the finding.

Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 382, 363 S.E.2d 433, 437 (1987), appeal after remand, 9 Va. App. 120, 127, 384 S.E.2d 333, 335 (1989). Here, the deputy commissioner found

that Stiltner and Vandyke were credible witnesses. Buchanan County argues that this finding by the deputy commissioner was necessarily a finding that the claimant lacked credibility based upon his demeanor at the hearing and, therefore, was binding upon the commission under Pierce. On this record, the commission could make its own credibility determinations by deciding which witnesses' accounts seemed more accurate, which accounts were believable, whether independent evidence corroborated various accounts, whether witnesses had motives or biases for testifying as they did, whether witnesses had an opportunity to observe, and such other factors that may affect credibility.

Pierce distinguishes between credibility determinations based upon specific observations of appearance and demeanor and those based upon the substance of the testimony and other evidence.

> When the deputy commissioner's finding of credibility is based, in whole or in part, upon the [witness'] appearance and demeanor at the hearing, the commission may have difficulty reversing that finding without recalling the witness. On the other hand, if the deputy commissioner's determination of credibility is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the full commission as by the deputy.

Pierce, 5 Va. App. at 383, 363 S.E.2d at 438. In the latter situation, the commission has no duty to explain its decision favoring the testimony of one witness over another "absent a specific, recorded observation regarding the behavior, demeanor

- 5 -

or appearance of [the witnesses]." Bullion Hollow Enters. v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992); see also Kroger Co. v. Morris, 14 Va. App. 233, 236, 415 S.E.2d 879, 881 (1992).

Upon review of the deputy commissioner's decision, it contained no "specific recorded observation" of the demeanor of the witnesses as a basis for determining credibility that would have been available and observable only by the hearing officer. See Lane, 14 Va. App. at 729, 418 S.E.2d at 907. "[A] deputy commissioner cannot render his findings of fact unreviewable simply by asserting that his conclusion as to a witness' credibility is based on the witness' appearance and demeanor." Williams v. Auto Brokers, 6 Va. App. 570, 574, 370 S.E.2d 321, 323 (1988). The deputy's credibility determination here was based primarily on the substantive testimony of the witnesses as well as other evidence in the record, such as the claimant's medical records. Although the deputy commissioner passingly mentioned the witnesses' demeanor, he did not describe or explain anything about the appearance or demeanor of the claimant that would indicate his testimony was incredible or that Vandyke and Stiltner were credible. Therefore, the commission did not err in finding that the deputy commissioner's credibility determinations were not binding and did not err in making its own credibility determinations, as the fact finder is required to do.

In reviewing whether the evidence is sufficient to prove an

accident or to prove causation, we do not reweigh the evidence or redetermine the credibility of the witnesses. Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). We do not redetermine the preponderance of the evidence or substitute our judgment for that of the commission. Id. We review the evidence in the light most favorable to the party prevailing before the commission. R. G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "The burden [of proof] is upon a claimant to prove by a preponderance of the evidence that he sustained a compensable injury" which requires proof of an accident and an injury caused by that accident. Virginia Dep't of Transp. v. Mosebrook, 13 Va. App. 536, 537, 413 S.E.2d 350, 351 (1992); see Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989).

The record clearly reflects a conflict in the testimony as to whether the claimant fell and hit his head on the ground. However, the commission placed weight on the fact that the claimant consistently reported to the employer, the hospital, the insurance carrier, and Dr. Brasfield that he first felt pain when trying to pry the door open before he claimed to have fallen. The deputy commissioner's finding that the emergency room records did not reflect that the injury was work-related is not supported by the record.

More importantly, the commission notes that Dr. Brasfield's first report opined that the claimant may have been embellishing

his symptoms and that "other motives" might have been "in play" since the claimant had asked Dr. Brasfield to "disable" him before this injury. However, after conducting a myelogram on March 23, 1995, Dr. Brasfield changed his diagnosis and stated affirmatively that the rupture of the claimant's C3 disk was not present before March 13, 1995 and, in his opinion, was causally related to his injury on March 13, 1995.

Based upon Dr. Brasfield's diagnosis of the claimant's injury and his opinion as to the cause thereof, combined with the general consistency of the claimant's account of the accident, sufficient credible evidence exists in the record to support the commission's award. Accordingly, the decision of the commission is affirmed.

Affirmed.