COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Bumgardner and
          Senior Judge Hodges


CORNING, INC. AND
 ROYAL INDEMNITY COMPANY

v.   Record No. 1752-00-3

TYLER V. BROWN                          MEMORANDUM OPINION*
                                             PER CURIAM
TYLER V. BROWN                          NOVEMBER 28, 2000

v.   Record No. 1768-00-3

CORNING, INC. AND
 ROYAL INDEMNITY COMPANY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (James A. L. Daniel; Elizabeth B. Carroll;
              Daniel, Vaughan, Medley & Smitherman, P.C.,
              on briefs), for Corning, Inc. and Royal
              Indemnity Company.

              (Henry G. Crider; Crider Law Office, on
              briefs), for Tyler V. Brown.


     Corning, Inc. and its insurer (hereinafter referred to as

"employer") contend that the Workers' Compensation Commission

erred in finding that Tyler V. Brown (claimant) proved that (1)

he sustained a compensable injury by accident on February 4,

1999; and (2) employer was responsible for the cost of medical

treatment provided by Dr. Frank Tate, a chiropractor.  On

─────────────────────
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

cross-appeal, claimant contends that the commission erred in finding that he failed to market his residual work capacity on or after May 17, 1999.  Upon reviewing the record and the briefs of the parties, we conclude that these appeals are without merit.  Accordingly, we summarily affirm the commission's decision.  See Rule 5A:27.

## I.  Injury by Accident

On appeal, we view the evidence in the light most favorable to the prevailing party below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

Claimant testified that on Thursday, February 4, 1999, at approximately 1:00 p.m., while working for employer as a tradesman, he was repairing a lehr belt.  This job required that he wedge a 2 x 6 board under the belt.  As claimant pried and pushed the board, in an effort to get it under the belt, he felt a burning sensation in his mid-back.  He had never felt this type of pain before.  He took a break and walked around.  The sharp pain subsided, but he still felt a bulging pain.  He was able to finish working that day, completing his shift at 3:30 p.m.  That day claimant mentioned to Mike Davis, his group leader, that he thought he had pulled something in his back.

Claimant worked Friday, February 5, 1999 and testified that his back did not start bothering him until he woke up on Saturday morning.

-

On Monday, February 8, 1999, claimant went to work and reported the incident to Carolyn Harrison, the plant nurse. Harrison did not offer claimant a panel of physicians. Claimant sought treatment from Dr. Tate that day.

On Tuesday, February 9, 1999, claimant reported the incident to Mike Jones, his supervisor. Claimant did not want to report his accident as a workers' compensation claim at that time because the company was in the middle of a period of no injuries and claimant thought that his back would get better in a few weeks. Claimant completed a form for short term disability, but he did not know that it would be submitted as unrelated to work and he did not indicate on the form whether the accident happened at work. Sometime in February 1999, claimant told employer's personnel supervisor, Kevin Konopski, that he wanted to "treat" the injury as a disability and not as a workers' compensation claim. Konopski admitted that he was aware that an accident report had been completed which indicated that claimant hurt his back while on the job on February 4, 1999 at 1:00 p.m. Konopski admitted that claimant never told him that the work-related incident had not happened.

Claimant denied telling any co-workers that his back injury was not work-related. Claimant agreed that he had back problems before February 4, 1999 and that he had treated with Dr. Tate for those problems. The record established that claimant had

-

not undergone any treatment for his back since 1991 until after the February 4, 1999 incident.

A February 9, 1999 accident report signed by claimant and Jones reflected that claimant was pushing a 2 x 6 board under a 172 lehr belt, which required him to lift, lower, and push at the same time. The report stated, "Did not feel anything at the time. Woke up next day with a sore back." The report noted that the injury occurred while performing normal duties, on the job, during regular work hours. Claimant specifically denied making the statement that he did not feel anything at the time of the incident.

A document entitled "PeopleSoft Incident Detail," completed on February 9, 1999, showed an incident of February 4, 1999, occurring at 1:00 p.m and reported on February 8, 1999. The report listed the nature of the injury as "[b]ack pain, hurt back" and the accident type as "[o]verexertion in pulling or pus[hing]." The report described the incident as follows: "Employee stated he was pushing a 2"x6" board under 172 lehr belt. It required lifting and lowering and pushing at the same time. He did not fell anything at the time. Woke up next day with sore back."

In ruling that claimant proved he sustained an injury by accident arising out of and in the course of his employment on February 4, 1999, the commission found as follows:

-

[W]e note the claimant's testimony concerning a specific incident which is corroborated by the various medical histories.  His testimony is buttressed by the PeopleSoft Incident Detail report.  The employer's initial accident report indicates a work injury and generally comports with claimant's testimony except that the report reflects that the claimant did not feel anything at the time.  The claimant testified to feeling some pain at the time but that it eased up, allowing him to continue to work the following day. . . .

We are not persuaded that an accident did not occur merely because the claimant elected to file for short term disability.  At the time the short-term disability was sought, Konopski was aware of the report indicating a work related injury. . . .  We note the claimant's testimony that he believed the disability to be for a short period of time and did not want to be the person to break the lost time record. . . .

\*  \*  \*  \*  \*  \*  \*

While the claimant agreed and several witnesses testified to discussions concerning back pain prior to this incident, we can find no medical report to indicate any treatment since April 1991, when he saw the chiropractor.  There is no medical evidence that claimant had any disc herniation or other similar problem. . . .  No witnesses testified that prior to the accident the claimant missed any time from work as a result of a back problem.

"In order to carry [the] burden of proving an 'injury by accident,' a claimant must prove that the <u>cause</u> of [the] injury was an <u>identifiable incident or sudden precipitating event</u> and that it resulted in an <u>obvious sudden mechanical or structural change in the body</u>."  <u>Morris v. Morris</u>, 238 Va. 578, 589, 385

-

S.E.2d 858, 865 (1989).  "In determining whether credible evidence exists [to support the commission's ruling], the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."  Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).  "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding."  Id.

Claimant's testimony, which was consistent with the various medical histories and which was generally corroborated by the accident report and PeopleSoft Incident Report, constituted credible evidence to support the commission's finding that claimant proved that he sustained a specific identifiable incident at work on February 4, 1999, resulting in a back injury.  As fact finder, the commission was entitled to weigh the evidence, accept claimant's testimony, and to reject any contrary testimony of employer's witnesses.  It is well settled that credibility determinations are within the fact finder's exclusive purview.  Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987).  Because the commission's finding is supported by credible evidence, we will not disturb it on appeal.

## II.  Medical Treatment

In ruling that employer was responsible for the cost of Dr. Tate's treatment up through May 12, 1999, the commission found as follows:

> [U]ntil May 12, 1999, the employer did not provide the claimant with a panel of physicians although being aware of an on the job injury. . . .  We find no evidence that Dr. Tate treated the claimant for this incident after May 7, 1999.  We find that Dr. [Stuart J.] Kramer, who was selected from the panel, in turn, referred the claimant to Dr. [Lawrence F.] Cohen, who then referred him to Dr. [Ramon R.] Erasmo for a second opinion.  Dr. Cohen ultimately referred the claimant to Dr. [Eduardo] Fairfield [sic].  We do note, however, that, inasmuch as the employer denied the claim, the claimant was free to seek medical treatment from a physician of his choice.  Therefore, . . . we can find no evidence of unauthorized medical care.

Contrary to employer's assertions in its brief, the record established that from the beginning, claimant consistently reported an on-the-job injury to employer's representatives and his medical providers.  Employer did not offer claimant a panel of physicians before May 12, 1999, and, therefore, he was entitled to seek treatment from Dr. Tate from February 1999 through May 12, 1999.

## III.  Marketing

"In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing

-

party before the commission . . . ." National Linen Serv. v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 32 (1989). In order to establish entitlement to benefits, a partially disabled employee must prove that he has made a reasonable effort to procure suitable work but has been unable to do so. Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987). Unless we can say as a matter of law that claimant's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us. Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

It was undisputed that on May 17, 1999, Dr. Kramer released claimant to light-duty work with restrictions of no lifting more than fifteen to twenty pounds, no excessive bending, and no squatting or crawling. Claimant's marketing efforts after May 17, 1999 consisted of seeking light-duty from employer, which was not available, and attempting to register with the VEC veterans outreach program. Claimant was advised he was not eligible for that program until he was released to full-duty by his physician. Claimant pursued no other means of employment. He did not seek assistance from employment agencies. He did not consult newspaper advertisements or complete any applications or arrange for any interviews.

Contrary to claimant's argument on appeal, the fact that he was undergoing physical therapy three times per week after May

-

17, 1999 did not excuse his obligation to seek suitable employment.

Based upon this record, we cannot find as a matter of law that claimant marketed his residual work capacity after May 17, 1999.

For the reasons stated, we affirm the commission's decision.

<u>Affirmed.</u>

-